IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:17-CT-3023-FL

| | | |
|---|---|---|
| JENNIFER ANN JASMAINE f/k/a DUANE LEROY FOX, | ) ) ) | |
| Plaintiff, | ) ) ) | ORDER |
| v. | ) ) | |
| DARELL FLOYD and JEREMY MCPHERSON, | ) ) ) ) | |
| Defendants.[1] | ) | |

This matter is before the court on the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56 (DE 104, 113). The motions were fully briefed, and the issues raised are ripe for decision. For the reasons that follow, the court grants defendants' motion and denies plaintiff's motion.

**STATEMENT OF THE CASE**

Plaintiff, a state inmate proceeding pro se, commenced this action by filing motions for preliminary injunction and temporary restraining orders on January 27, 2017, alleging claims for violations of her civil rights pursuant to 42 U.S.C. § 1983. On August 29, 2017, the court construed plaintiff's motions for injunctive relief as an attempt to initiate an action under 42 U.S.C. § 1983. The court therefore conducted a frivolity review of plaintiff's motions, determined they

---

[1] The court constructively has amended the caption of this order to reflect prior dismissal of plaintiff's claims against formerly-named defendants Edward Thomas, Ms. Smith, Brad Perry, Preston Thompson, Mr. Trout, Melinda Ebson, Jaron Gibbs, David Hicks, Gerome Freeman, Timothy Byrd, Adam Swinton, Beverly Major, David Crandol, Kenneth Donald, Mr. Nehls, Phillip W. Tolman, Mr. Bell, Mr. Hovis, John and Jane Does, Robert F. Fearnot, Lydra Freeman, and Captain McPherson.

did not state a claim on which relief may be granted, and allowed plaintiff to file an amended complaint particularizing her allegations.[2]

On January 19, 2018, plaintiff filed the operative amended complaint. The court conducted its frivolity review of plaintiff's amended complaint on July 26, 2018, dismissed numerous claims as frivolous or duplicative of a prior action, and allowed the action to proceed as to plaintiff's claims alleging excessive force and deliberate indifference to serious medical needs related to her degenerative disc disease. Plaintiff alleged these claims against defendant prison officials Darell Floyd ("Floyd"), Jeremy McPherson ("McPherson"), Phillip W. Tolman ("Tolman"), and Robert F. Fearnot ("Fearnot").[3]

On September 11, 2019, the court dismissed plaintiff's claims against defendants Fearnot and Tolman without prejudice, upon their motions for summary judgment and to dismiss, leaving claims remaining against defendants Floyd and McPherson.

Following a period of discovery, and in accordance with the court's case management order, defendants Floyd and McPherson filed the instant motion for summary judgment on November 20, 2020. In support of the motion, defendants rely upon a memorandum of law, statement of material facts, and appendix of exhibits thereto, comprising of the following: 1) affidavits of defendants 2) affidavit of Mark Trock, Correctional Housing Unit Manager with

---

[2] Plaintiff also filed with her complaint and on July 13, 2017, motions for appointment of counsel. Between July 14, 2017, and August 3, 2017, plaintiff filed 13 requests for discovery, which included notices to take defendants' depositions, requests for production of documents, and requests for admissions. On August 4, 2017, plaintiff filed a motion for scheduling conference. In its August 29, 2017, order, the court denied plaintiff's motions for injunctive relief, for appointment of counsel, and for a scheduling conference.

[3] In the meantime, plaintiff filed additional requests for counsel and a second motion for preliminary injunction or temporary restraining order. In its July 26, 2018, order, the court denied plaintiff's motions for appointment of counsel and injunctive relief. Thereafter, plaintiff moved for reconsideration of the court's July 26, 2018, order, which motion the court denied August 15, 2018.

2

the North Carolina Department of Public Safety; 3) a use of force policy; 4) video; and 5) incident report. Plaintiff filed the instant cross-motion for summary judgment on December 4, 2020. In support of the motion, plaintiff relies upon a memorandum of law, statement of material facts, and supporting exhibits comprising of the following: 1) photographs; 2) incident report; and 3) witness statements.

## STATEMENT OF THE FACTS

The facts, viewed in the light most favorable to plaintiff, may be summarized as follows. On November 17, 2016, while incarcerated at Tabor Correctional Institution ("Tabor C.I."), plaintiff refused a direct order from defendant Floyd to lock down. (Defs.' Stmt. (DE 105) ¶ 15; McPherson Aff. (DE 106-2) ¶ 10; Trock Aff. (DE 114-2) ¶ 17 and Ex. C (DE 114-5) 22; Floyd Aff. (DE 114-1) ¶ 10; Pl.'s Stmt. (DE 113) 6).[4] After refusing a second order from Correctional Housing Unit Manager Jamese Smith ("Unit Manager Smith") to lock down, plaintiff went to her cell and slammed her cell door several times. (Defs.' Stmt. ¶ 16; Trock Aff. ¶ 17 and Ex. C at 22; Pl.'s Stmt. at 6). Unit Manager Smith and defendants then went to plaintiff's cell and ordered her to submit to wrist restraints, which she complied with. (Defs.' Stmt. ¶ 17; McPherson Aff. ¶ 10; Trock Aff. ¶ 17 and Ex. C at 22; Floyd Aff. ¶ 10; Pl.'s Stmt. at 6). Defendants then escorted plaintiff to an elevator. (Defs.' Stmt. ¶¶ 18, 37-38; McPherson Aff. ¶ 10; Trock Aff. ¶ 18 and Ex. B Video Sallyport L25; Floyd Aff. ¶ 10; Pl.'s Stmt. at 6-8).

When they entered the elevator, defendants ordered plaintiff to face the back of the elevator and plaintiff refused and responded with profanity. (Defs.' Stmt. ¶ 19; McPherson Aff. ¶ 11;

---

[4] Unless otherwise specified, page numbers specified in citations to the record in this order refer to the page number of the document designated in the court's electronic case filing (ECF) system, and not to page numbering, if any, specified on the face of the underlying document.

Trock Aff. ¶ 18 and Ex. B Video Elevator L 526 at 8:02:53-8:03:07; Floyd Aff. ¶ 11; Pl.'s Stmt. at 6-7). Defendants repeated the order and plaintiff again refused. (McPherson Aff. ¶ 11; Trock Ex. B Video Elevator L 526 at 8:03:03-8:03:07; Floyd Aff. ¶ 11). Defendants attempted to turn plaintiff towards the back wall and plaintiff resisted. (Defs.' Stmt. ¶ 20; McPherson Aff. ¶ 11; Trock Aff. ¶ 19 and Ex. B Video Elevator L 526 at 8:03:03-8:03:07; Floyd Aff. ¶ 11). At that moment, defendants pushed plaintiff to the rear corner of the elevator using one hand on each of plaintiff's elbow areas. (Defs.' Stmt. ¶¶ 20-21; McPherson Aff. ¶ 11; Trock Aff. ¶ 19 and Ex. B Video Elevator L 526 at 8:03:07-8:03:09; Floyd Aff. ¶ 11; Pl.'s Stmt. at 7). Plaintiff testified in a witness statement completed during the North Carolina Department of Public Safety ("DPS") investigation that she told defendants that she "didn't have to" face the wall, that she "resisted[,] and that's when the sergeant slammed [her] into the wall with [her] head." (Trock Ex. C at 22).

Once plaintiff was on the wall, defendants tried to hold her still. (Defs.' Stmt. ¶ 22; McPherson Aff. ¶ 12; Trock Aff. ¶ 20 and Ex. B Video Elevator L 526 at 8:03:09-8:03:19; Floyd Aff. ¶ 12). Plaintiff resisted and turned her right leg towards defendant McPherson. (Defs.' Stmt. ¶ 23; McPherson Aff. ¶ 12; Trock Ex. B Video Elevator L 526 at 8:03:19-8:03:22; Floyd Aff. ¶ 12). At that moment, defendant McPherson pushed his upper torso against plaintiff and defendant Floyd dropped down to his knees and helped defendant McPherson place plaintiff on her knees. (Defs.' Stmt. ¶ 24; McPherson Aff. ¶ 12; Trock Aff. ¶ 20 and Ex. B Video Elevator L 526 at 8:03:19-8:03:26; Floyd Aff. ¶ 12). Defendants then placed plaintiff's entire body on the floor and held her down until other correctional officers arrived to help. (Defs.' Stmt. ¶ 25; McPherson Aff. ¶ 12; Trock Aff. ¶ 20 and Ex. B Video Elevator L 526 at 8:03:26-8:03:49 & Video Sallyport L5 at 8:03:30-8:03:48; Floyd Aff. ¶ 12; Pl.'s Stmt. at 7). Plaintiff testified that "when

4

[she] turned, the sergeant grabbed [her] legs and pulled them from underneath [her], slamming [her] on [her] face and putting his knee in [her] back." (Trock Ex. C at 22).

Once the other correctional officers arrived, defendants helped plaintiff get up, but she dropped her weight so defendants placed one arm through the loop of plaintiff's arms to escort her to the holding cell. (Defs.' Stmt. ¶ 26; McPherson Aff. ¶ 13; Trock Aff. ¶ 20 and Ex. B Video Elevator L 526 at 8:03:47-8:03:57 & Video Sallyport L5 at 8:03:48; Floyd Aff. ¶ 13; Pl.'s Stmt. at 7). During the escort, plaintiff repeatedly dropped her weight and walked in a crouched position which caused her arms to raise higher. (Defs.' Stmt. ¶ 27; McPherson Aff. ¶ 13; Trock Ex. B Video Sallyport L5 at 8:03:48-8:04:01 & Video CORRIDOR C36 at 8:07:13-8:07:32; Floyd Aff. ¶ 13; Pl.'s Stmt. at 7). This continued until plaintiff was placed in the holding cell. (Defs.' Stmt. ¶ 28; McPherson Aff. ¶ 13; Trock Ex. B Video Sallyport L5 at 8:03:48-8:04:01 & Video CORRIDOR C36 at 8:07:13-8:07:32; Floyd Aff. ¶ 13; Pl.'s Stmt. at 7). Plaintiff testified that defendants "bent [her] arms so far that [she] felt like [she] passed out." (Trock Ex. C at 23).

Shortly thereafter, other correctional officers escorted plaintiff to the sick call room for a post-use of force medical assessment. (Defs.' Stmt. ¶¶ 41, 45; Trock Aff. ¶ 21 and Ex. B Video Corridor Upper Red at 8:09:25-8:09:29; Pl.'s Stmt. at 8, 10). Plaintiff was medically screened by Registered Nurse Deborah Sanderson who stated that:

> There were no injuries noted o[n] the left side of [plaintiff's] head, no swelling, bruising, abrasions or scratches; [plaintiff] stated [her] head was slammed onto elevator wall on left side. At the bend of [her] right knee, the underneath surface there was a superficial scratch of the top layer of skin with no open area and no drainage; [plaintiff] stated the officer grabbed [her] by [her] lower legs pulling them underneath [her] but changed later and stated they grabbed [her] under [her] knees. Denied scratching self. Denied pain when asked twice.

(Trock Ex. C at 19). Plaintiff contends there were knots on her head. (Pl.'s Stmt. at 7 & Ex.s A-

5

C (DE 113-1)–(DE 113-3)).

**DISCUSSION**

A. Standard of Review

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the non-moving party must then "come forward with specific facts showing that there is a genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (internal quotation omitted).

Only disputes between the parties over facts that might affect the outcome of the case properly preclude entry of summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986) (holding that a factual dispute is "material" only if it might affect the outcome of the suit and "genuine" only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party). "[A]t the summary judgment stage the [court's] function is not [itself] to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Id. at 249. In determining whether there is a genuine issue for trial, "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [non-movant's] favor." Id. at 255; see United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) ("On summary judgment the inferences to be drawn from the underlying facts contained in

6

[affidavits, attached exhibits, and depositions] must be viewed in the light most favorable to the party opposing the motion.").

Nevertheless, "permissible inferences must still be within the range of reasonable probability, . . . and it is the duty of the court to withdraw the case from the [factfinder] when the necessary inference is so tenuous that it rests merely upon speculation and conjecture." Lovelace v. Sherwin–Williams Co., 681 F.2d 230, 241 (4th Cir. 1982) (quotations omitted). Thus, judgment as a matter of law is warranted where "the verdict in favor of the non-moving party would necessarily be based on speculation and conjecture." Myrick v. Prime Ins. Syndicate, Inc., 395 F.3d 485, 489 (4th Cir. 2005). By contrast, when "the evidence as a whole is susceptible of more than one reasonable inference, a [triable] issue is created," and judgment as a matter of law should be denied. Id. at 489-90.

B. Analysis

Plaintiff alleges defendants used excessive force against her in violation of the Eighth Amendment. The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" which constitutes cruel and unusual punishment. Whitley v. Albers, 475 U.S. 312, 319 (1986). The excessive force inquiry has an objective prong and a subjective prong. Under the objective prong, the inmate must establish that the forced used was "nontrivial" or more than "de minimis." Wilkins v. Gaddy, 559 U.S. 34, 39 (2010) (per curiam); Hudson v. McMillian, 503 U.S. 1, 10 (1992).

To satisfy the subjective prong, the inmate must show a prison official acted with a "sufficiently culpable state of mind." Wilson v. Seiter, 501 U.S. 294, 297 (1991). In an excessive force case, "the 'state of mind required is wantonness in the infliction of pain.'" Brooks

7

v. Johnson, 924 F.3d 104, 112 (4th Cir. 2019) (quoting Iko v. Shreve, 535 F.3d 225, 239 (4th Cir. 2008)). The relevant inquiry for the subjective prong is whether the force was applied "in a good faith effort to maintain or restore discipline," or "maliciously" and "for the very purpose of causing harm." Whitley, 475 U.S. at 320-21; Brooks, 924 F.3d at 113. The "question is not whether a reasonable officer could have used force to maintain discipline, but whether these particular officers did use force for that reason." Brooks, 924 F.3d at 113. "Corrections officers act in a 'good faith effort to maintain or restore discipline' – that is, with a permissible motive – not only when they confront immediate risks to physical safety, but also when they attempt to 'preserve internal order' by compelling compliance with prison rules and procedures." Id. (quoting Hudson, 503 U.S. at 6-7); see also Dean v. Jones, 984 F.3d 295, 302 (4th Cir. 2021). "But corrections officers cross the line into an impermissible motive – using force 'maliciously' and for the 'very purpose of causing harm,' – when they inflict pain not to induce compliance, but to punish an inmate for intransigence or to retaliate for insubordination." Brooks, 924 F.3d at 113 (quoting Whitley, 475 U.S. at 320-21); see also Williams v. Benjamin, 77 F.3d 756, 765 (4th Cir. 1996).

At the summary judgment stage, "the inquiry under the subjective component boils down to whether a reasonable jury could determine that an officer acted with malice, applying force punitively and 'for the very purpose of causing harm.'" Dean, 984 F.3d at 302 (quoting Whitley, 475 U.S. at 320-21). The officers' subjective motive may be proved through direct or circumstantial evidence. Id. at 308-09; Brooks, 924 F.3d at 114-16. With respect to circumstantial evidence, the court considers four factors "from which . . . inferences may be drawn as to the officers' motives." Brooks, 924 F.3d at 116. These factors are: "(1) 'the need for the

8

application of force'; (2) 'the relationship between the need and the amount of force that was used'; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) 'any efforts made to temper the severity of a forceful response.'" Dean, 984 F.3d at 302 (quoting Whitley, 475 U.S. at 321).

Plaintiff alleges defendants used excessive force when they "slammed her against the wall of an elevator," when they "[dug] into the back of her knee to get to her leg … and slammed her head first on the floor" of the elevator, and when they "bent her arms so far up that her head was about one foot from the ground and escorted her to a holding cage." (Pl's Mem. Supp. Mot. Summ. J. (DE 113) 13-14). Defendants argue that the record evidence does not support the subjective component of plaintiff's excessive force claims. (Defs.' Mem. Supp. Mot. Summ. J. (DE 112) 8-12).

The court begins with the first and third Whitley factors: the need for application of force and the officers' perception of risk to their safety. Plaintiff admits that prior to being escorted to the elevator she refused an order to lock down and slammed her cell door several times. (Pl.'s Stmt. at 6; Trock Ex. C at 22). Plaintiff also admits, and the video recording shows, that when they entered the elevator, defendants ordered plaintiff to face the back of the elevator and plaintiff refused and responded with profanity. (Id.). Defendants repeated the order and plaintiff again refused. Plaintiff testified in a witness statement that she told defendants that she "didn't have to" face the wall, that she "resisted[,] and that's when the sergeant slammed [her] into the wall." (Trock Ex. C at 22). Even after the initial use of force, plaintiff continued to resist and "when [she] turned, the sergeant grabbed [her] legs." (Id.). Given that plaintiff had just slammed her cell door several times in resistance to another order, repeatedly resisted the defendants' orders

9

once they got into the elevator, and continued to resist the defendants' orders after the initial use of force, the defendants reasonably interpreted such actions as a threat to their security. See Whitley, 475 U.S. at 320-21; Brooks, 924 F.3d at 113; Williams, 77 F.3d at 762-63 (holding officers reasonably perceived threat to safety where plaintiff failed to obey commands to stop throwing liquids from his cell, even though plaintiff was confined inside the cell); Allen v. Anderson, No. 5:13-CT-3238-FL, 2018 WL 1542232, at *6 (E.D.N.C. Mar. 29, 2018) (unpublished), aff'd, 736 F. App'x 416 (4th Cir. 2018) (unpublished) (per curiam) (holding the need for force was apparent where plaintiff yelled an expletive and continued resisting officers' efforts to subdue him). Thus, the first and third Whitley factors weigh in favor of finding the use of force was a good faith effort to maintain or restore discipline.

The second and fourth Whitley factors address the relationship between the need for application and the amount used, and any efforts made to temper the severity of a forceful response. Plaintiff alleges defendants "slammed" her against the wall of the elevator, "dug" into her leg, and "slammed" her onto the floor of the elevator. Plaintiff admits, and the video recording reflects, that defendants repeatedly ordered her to face the back of the elevator and she "resisted, and that's when the sergeant slammed [her] into the wall." (Trock Ex. C at 22). Moreover, after the initial use of force, the defendants tried to hold plaintiff still in the standing position, but plaintiff continued to resist and "when [she] turned, the sergeant grabbed [her] legs." (Id.). As the video reflects, when plaintiff turned her right leg towards defendant McPherson, defendant McPherson pushed his upper torso against plaintiff and defendant Floyd dropped to his knees and helped defendant McPherson place plaintiff on her knees. Defendants then "slammed" plaintiff's entire body on the floor and held her down until other correctional officers arrived to help. The entire

10

sequence of events from when they entered the elevator until defendants helped plaintiff get up off the floor lasted under a minute. (Trock Ex. B Video Elevator L 526 at 8:03:03-8:03:48). Under these circumstances, the court finds the use of force was not a disproportionate response considering plaintiff's continued resistance to follow orders and the rapidly evolving sequence of events. See Graham v. Connor, 490 U.S. 386, 396-97 (1989) (explaining that "police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation" and courts must take that circumstance into account when considering whether a constitutional violation occurred); Grayson v. Peed, 195 F.3d 692, 696 (4th Cir. 1999) ("In dealing with such agitated detainees prison officials must not be forced to walk a tightrope and face the prospect of a lawsuit [for either excessive force or failing to protect an inmate from harming himself] no matter which way they turn."); cf. Brooks, 924 F.3d at 114 (holding genuine dispute of material fact precluded summary judgment where officer deployed pepper spray after plaintiff had clearly stopped resisting and was lying on the ground).

Furthermore, while not dispositive, the court notes that plaintiff's lack of significant injury weighs in favor of defendants. See Wilkins, 559 U.S. at 37 ("The extent of injury suffered by an inmate is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation." (internal quotations omitted)); Williams, 77 F.3d at 762. Plaintiff was medically screened after the use of force and the nurse found no injuries, swelling, bruising, abrasions, or scratches on plaintiff's head, and noted that plaintiff denied being in pain when asked twice. (Trock Ex. C at 19). The record reflects that, at most, plaintiff sustained a superficial scratch on the top layer of skin underneath her right knee and knots on her head.

11

(Trock Ex. C. at 19; Pl.'s Stmt. at 7 & Ex.s A-C (DE 113-1)-(DE113-3)).

Taken as a whole, the Whitley factors do not suggest that defendants' use of force was excessive under the circumstances. Accordingly, the court grants defendants' motion for summary judgment as to plaintiff's claims that defendants used excessive force when they "slammed" her twice in the elevator.

As for plaintiff's claim that defendants used excessive force when they escorted her out of the elevator, plaintiff alleges that defendants "bent her arms so far up that her head was about one foot from the ground." (Pl's Mem. Supp. Mot. Summ. J. (DE 113) 14, 19-20). The video evidence contradicts plaintiff's account. See Scott v. Harris, 550 U.S. 372, 380-81 (2007) (holding court is not required to credit plaintiff's version of events that is blatantly contradicted by undisputed video recording); Harris v. Pittman, 927 F.3d 266, 275-76 (4th Cir. 2019). As set forth above, the video evidence shows that when defendants helped plaintiff get up, she dropped her weight so defendants placed one arm through the loop of plaintiff's arms. (Trock Ex. B Video Elevator L 526 at 8:03:47-8:03:57 & Video Sallyport L5 at 8:03:48). Plaintiff repeatedly dropped her weight and walked in a crouched position which caused her arms to raise higher. (Trock Ex. B Video Sallyport L5 at 8:03:48-8:04:01 & Video CORRIDOR C36 at 8:07:13-8:07:32). This continued until plaintiff was placed in the holding cell. (Trock Ex. B Video Sallyport L5 at 8:03:48-8:04:01 & Video CORRIDOR C36 at 8:07:13-8:07:32). The video evidence shows that plaintiff's head was above her waist during the escort. Thus, plaintiff cannot establish that a rational jury would find that the escort occurred in the manner that plaintiff describes. Accordingly, the court grants defendants' motion for summary judgment as to plaintiff's claims that defendants used excessive force when they escorted her out of the elevator.

12

C.  Plaintiff's Motion for Summary Judgment

Because the court has determined that, based on facts in the light most favorable to plaintiff, she has failed to establish a genuine issue of material fact precluding summary judgment on her excessive force claims, plaintiff's motion for summary judgment must fail. Accordingly, the court denies plaintiff's motion for summary judgment.

## CONCLUSION

Based on the foregoing, the court GRANTS defendants' motion for summary judgment (DE 104) and DENIES plaintiff's motion for summary judgment (DE 113). The clerk is DIRECTED to close this case.

SO ORDERED, this the 22nd day of March, 2021.

LOUISE W. FLANAGAN
United States District Judge